IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:11CR124 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND |
| | ) | |
| KEVIN L. MCGHEE, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion to suppress filed by Kevin L. McGhee (McGhee) (Filing No. 20). McGhee is charged in the Indictment with the knowing possession of a firearm while being an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3). **See** Filing No. 1. McGhee seeks to suppress all evidence obtained as a result of contact with officers of the Omaha Police Department (OPD) on March 20, 2011, while the officers were executing a search warrant at 5815 North 42nd Street, Omaha, Nebraska.

An evidentiary hearing was held on McGhee's motion on June 28, 2011. McGhee was present for the hearing along with his counsel, Matthew R. Kahler. The United States was represented by Assistant United States Attorney Michael P. Norris. During the hearing, the court heard the testimony of OPD Officers Brett Becker (Officer Becker) and Chris Brown (Officer Brown). The court received into evidence the following Exhibits: Exhibit 1 - a copy of a CD containing the OPD interview with McGhee; Exhibit 2 - an OPD Rights Advisory Form; and Exhibit 3 - an Application and Affidavit for a search warrant. A transcript of the hearing (TR.) was prepared and filed on July 6, 2011 (Filing No. 30).

**FINDINGS OF FACT**

On March 18, 2011, Officer Becker obtained a search warrant authorizing a search of the residence at 5815 North 42nd Street in Omaha, Nebraska (TR. 6). Officer Becker obtained the warrant after an investigation including a trash pull and daytime surveillance determined there was potential selling of narcotics (Ex. 3). The search warrant authorized agents to search for marijuana, its derivatives and administering instruments, all monies, records, cell phones, computers, weapons, and ammunition used to conduct an illegal

narcotics operation (TR. 8, Ex. 3). The search warrant authorized search of the residence at 5815 North 42nd Street and included vehicles at the location with the following language:

> The above location also includes all vehicles at the location which are connected to, or under the control of the persons in control of that location where the items or property Affiant Officer are [sic] seeking might be hidden or kept, as well as outbuildings, structures, or storage areas on the same property whether those buildings or vehicles are located in or outside of the curtilage of the premises, where the items described below may reasonably be hidden or kept.

(TR. 8-9, Ex. 3). The search warrant listed Tanaya Strickland-Brown, Michael Brown, and Dennis Watkins as the persons in control or in custody of the residence (Ex. 3). McGhee's name was not listed in the search warrant (Ex. 3).

On March 20, 2011, Officer Becker, accompanied by Officer Brown, the Emergency Response Unit (ERU), and other officers, executed the search warrant at 5815 North 42nd Street (TR. 6, 33). Officer Becker and the ERU entered the residence and made their way down into the basement (TR. 11). Adjacent to the stairs in the northeast corner of the basement was a bedroom set up like a commons area with a television, coffee table, and couch (TR. 11). Four men were inside the bedroom: Michael Brown, McGhee, and two other individuals (TR. 11, 15). A Kel-Tec nine-millimeter firearm and a magazine of ammunition were on the couch sitting next to McGhee (TR. 13, 34). The firearm was later found to be registered to McGhee (TR. 13, 34). The four individuals were handcuffed and brought upstairs to the living room (TR. 12, 46). Inside the basement bedroom, law enforcement officers observed loose marijuana on the coffee table and clear plastic baggies next to the television (TR. 14, 35). They also discovered marijuana in the closet (TR. 14, 35). In total, two pounds of marijuana was seized from the residence (TR. 19). Law enforcement officers also searched McGhee's rental vehicle, a Hyundai Accent, which was parked in the space at the rear of the residence within the curtilage of the residence (TR. 9-10). The officers found an Enterprise rental agreement made out to Kevin McGhee in the glove box of the car and less than an ounce of marijuana in the center console (TR. 16). Along with the gun in the residence and the marijuana in the car, the police seized approximately $1865 in U.S. currency from McGhee (TR. 19-20).

An hour after the warrant was executed, McGhee was taken to OPD headquarters and interviewed by Officer Brown (TR. 17-18, 36). McGhee waived his **Miranda** rights and agreed to an interview (TR. 38; Ex.s 1 and 2). During the interview McGhee was calm and very cooperative (TR. 39). Officer Brown questioned him regarding the items found in his vehicle, asking specifically, "You know what we found inside the car, of course, right?" (TR. 40; Ex. 1). "Do you know what it is? What was it?" (TR. 40; Ex. 1). McGhee responded, "marijuana." (TR. 40; Ex. 1). Officer Brown asked McGhee if the marijuana was his or if he sells it, and McGhee told Officer Brown it was his marijuana (Ex. 1). When asked how often he smokes marijuana, McGhee replied "as often as I can" (Ex. 1). McGhee denied selling or trading marijuana and also denied buying marijuana from Michael Brown (Ex. 1). McGhee stated he knew Michael Brown from the barber shop he goes to, and was at 5815 North 42nd Street to gamble and play cards (Ex. 1). McGhee stated he plays cards at 5815 North 42nd Street a few times a week (Ex. 1). After the interview, Officer Brown cited McGhee for marijuana possession and released him (TR. 42).

## LEGAL ANALYSIS

McGhee seeks to suppress items found during the search of his vehicle and his statements made to law enforcement officials while in custody on March 20, 2011. McGhee contends he was a guest at the residence at 5815 North 42nd Street, which was the subject of the search warrant on March 20, 2011, therefore his vehicle was outside the scope of the search warrant. He further argues that since the search of the vehicle was illegal, the statements he made to police while in custody were fruit of the illegal search. In response, the government contends McGhee was "connected to" the residence and his vehicle was covered under the scope of the search warrant. Further, the government argues even if the vehicle search was not covered under the search warrant, the officers acted in good faith, therefore the evidence found in the vehicle should not be suppressed. Last, the government argues the statements made by McGhee while in custody are not fruit of the illegal search because officers took McGhee to the police station for his involvement at the residence, not the marijuana found in the vehicle.

I.   **Scope of the Search Warrant**

"The authority to search granted by any warrant is limited to the specific places described in it and does not extend to additional or different places." *United States v. Johnson*, 640 F.3d 843, 845 (8th Cir. 2011) (**citing** *United States v. Pennington*, 287 F.3d 739, 744 (8th Cir. 2002)). "[A] vehicle found on a premises (**except, for example, the vehicles of a guest or other caller**) is considered to be included within the scope of a warrant authorizing a search of that premises." *United States v. Gamboa*, 439 F.3d 796, 807 (8th Cir. 2006) (**citing** *Pennington*, 287 F.3d at 745) (emphasis added); *United States v. Reivich*, 793 F.2d 957, 963 (8th Cir. 1986). In *Johnson*, the defendant argued the search of his vehicle exceeded the scope of the warrant because the vehicle was not connected to an occupant or permanent resident. *Johnson*, 640 F.3d at 845. The court denied the defendant's motion to suppress on the grounds there were facts connecting him to the residence prior to the search of his vehicle. *Id.* at 846. The court noted, prior to obtaining the warrant, the police observed the defendant at the residence, he later had keys to the residence on his person, and another party had described the extent of the defendant's presence during execution of the warrant. *Id.* at 846.

In this case, the relevant language of the search warrant states, in addition to the residence, officers may search "all vehicles at the location which are connected to, or under the control of the persons in control of that location where the items or property Affiant Officer are [sic] seeking might be hidden or kept . . ." (Ex. 3). The search warrant lists Michael Brown, Tanaya Strickland-Brown, and Dennis Watkins as the persons who are in control of the residence (Ex. 3). The rental vehicle at issue was under the control of McGhee. The circumstances of this case can be distinguished from those of *Johnson*. McGhee was not observed at the residence prior to issuance of the search warrant, nor was his vehicle. Further, there were no venue items tying McGhee to the residence. There was no evidence connecting McGhee's vehicle to Michael Brown, Tanaya Strickland-Brown, or Dennis Watkins other than the fact it was parked in a space at the back of their residence at the time the search warrant was executed.

Other circuits that have held the scope of a search warrant of a residence encompasses all vehicles within curtilage, have described significantly more evidence of the owner of the residence's control of the vehicle than has been shown in this case. **See**

4

*United States v. Gottschalk*, 915 F.2d 1459 (10th Cir. 1990) (noting officers had sufficient indicia of control by discovering vehicle on premises, knowing it was inoperable and had been for some time, having reliable information it was being used as storage by the owner of the residence, and knowing the owner of the residence had physical access to vehicle's keys); *United States v. Evans*, 92 F.3d 540 (7th Cir. 1996) (noting the defendant was a subject of the search warrant, his vehicle was parked in the garage of a crack house the police knew him to have frequented and sometimes resided); *United States v. Motz*, 936 F.2d 1021 (9th Cir. 1991) (noting the agents had reason to believe the defendant was involved in a conspiracy and was temporarily staying at the residence).

While in this case McGhee admittedly went to the residence a few times a week to gamble, there was no evidence he was more than a periodic guest. Relying on the Eighth Circuit's holding that guest vehicles found on premises are not included within the scope of a search warrant, because the police had no evidence the vehicle was connected to or in the control of the persons in control of the residence, the search of McGhee's rental vehicle was beyond the scope of the search warrant.

II.   *Leon* **Good-Faith Exception**

The government contends even if the vehicle search was illegal, the evidence obtained should be admissible under *United States v. Leon*, 468 U.S. 897 (1984). Under the *Leon* good-faith exception, "evidence seized pursuant to a search warrant . . . that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Proell*, 485 F.3d 427, 430-31 (8th Cir. 2007). "The rationale for the good-faith exception is that no justification exists to exclude evidence 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.'" *Id.* (**quoting** *Leon*, 468 U.S. at 920). When the warrant is not invalid but the search exceeds its scope, as in this case, the *Leon* exception does not apply. See *United States v. Schroeder*, 129 F.3d 439 (8th Cir. 1997) (noting the government's reliance on *Leon* was misplaced when officers searched outside the scope of a valid warrant). "The Supreme Court has, however, recognized 'the need to allow some latitude for honest mistakes that are made by officers . . . executing search warrants.'" *Id.* (**citing** *Maryland v. Garrison*, 480 U.S. 79, 87 (1987) (holding that officers

5

who searched an adjoining apartment in addition to the one they had reason to believe contained evidence of crime acted reasonably in doing so because "[t]he objective facts available to the officers at the time suggested no distinction" between the two apartments)).

In this case, there is no dispute the rental vehicle was parked in the space at the back of the house. Officer Becker testified, however, he had no evidence before or during the execution of the search warrant that the parties named in the warrant were connected in any way to the rental vehicle. Further, there is no evidence as to how the rental vehicle's keys came into the possession of the officers. The government has failed to show the officers acted in good faith when searching outside the scope of the warrant. Having no evidence connecting the rental vehicle to the persons in control of the residence, the government has failed to show the officers were objectively reasonable in searching the vehicle. In this case, the marijuana found in McGhee's vehicle should be suppressed.

### III.   Fruit of the Illegal Search

Finally, the government contends the statements made by McGhee during the interview are not fruit of the poisonous tree, because a sufficient attenuation existed between the illegal search and the police interview. The "question in such a case . . . is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *United States v. Faulkner*, 636 F.3d 1009, 1016 (8th Cir. 2011) (**citing** *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). "When determining if sufficient attenuation exists, we must focus on three specific factors: (1) the time elapsed between the illegality and acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *United States v. Simpson*, 439 F.3d 490, 495 (8th Cir. 2006) (**citing** *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975)).

In this case, the interview at OPD headquarters happened less than an hour after the search of McGhee's vehicle. Further, the court has determined the rental vehicle search was objectively unreasonable. The government argues McGhee was interviewed because of his involvement at the residence, not the contents of the vehicle search. While the purpose of the interview may have been McGhee's involvement at the residence, Officer Brown

6

immediately began his post-*Miranda* questioning regarding the search of McGhee's vehicle. McGhee admitted to being a user of marijuana in direct response to the specific questioning about the contents of his vehicle. This happened before he was even questioned about his involvement at the residence. The court therefore finds McGhee's statements regarding his use of marijuana were not solicited "by means sufficiently distinguishable to be purged of the primary taint of the illegal vehicle search." Upon consideration,

**IT IS RECOMMENDED TO SENIOR JUDGE LYLE E. STROM that:**

Kevin L. McGhee's motion to suppress ([Filing No. 20](#)) be granted.

**ADMONITION**

Pursuant to [NECrimR 59.2](#) any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 27th day of July, 2011.

BY THE COURT:

s/ Thomas D. Thalken<br>
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.